IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

GLENWOOD CAPITAL, LLC,            )
                                  )
                Plaintiff,        )
                                  )
        v.                        )      Case No. 13-2109-RDR
                                  )
                                  )
WEST PLAINS COMPANY,              )
WEST PLAINS LLC.                  )
                Defendants.       )

## MEMORANDUM AND ORDER

Glenwood Capital, LLC (Glenwood) brings this action against West Plains Company (WP Company) and West Plains, LLC (WP LLC). The claims arise out of a purported agreement between Glenwood and WP Company. Glenwood asserts three causes of action against WP Company: breach of an oral contract, quantum meruit and fraudulent inducement. Glenwood asserts two causes of action against WP LLC: breach of an oral contract and quantum meruit. This matter is presently before the court upon the following motions: (1) WP Company's motion for summary judgment; (2) WP LLC's motion for summary judgment; and (3) Glenwood's motion for sanctions against WP LLC. Having carefully reviewed the arguments of the parties, the court is now prepared to rule.

I.

The court shall first consider the motions for summary judgment. This is a case based upon diversity of citizenship jurisdiction. The claims in this case arise in Missouri and, thus, Missouri law controls.

The defendants seek summary judgment on all of the claims asserted by Glenwood against each of them. WP Company contends in its motion that Glenwood's claims must fail because it has produced insufficient evidence to support its claims for damages. WP LLC argues that it is entitled to summary judgment on the claims brought by Glenwood against it because WP Company was not authorized to entered into the oral contract with Glenwood and WP LLC was not a part of any agreement or request for services with Glenwood.

II.

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The requirement of a genuine issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Essentially, the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. Id. at 251-52.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be met by showing that there is a lack of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S.

317, 325 (1986).  Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial.  See Anderson, 477 U.S. at 256.  A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of [its] pleading, but must set forth specific facts showing that there is a genuine issue for trial. Id.  Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  See id.

When reviewing a motion for summary judgment, the court should keep in mind three principles. First, the court's role is not to weigh the evidence, but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial. See Anderson, 477 U.S. at 249.  Second, the court must resolve all reasonable inferences and doubts in favor of the non-moving party and construe all evidence in the light most favorable to the non-moving party.  See Hunt v. Cromartie, 526 U.S. 541, 550–55 (1999). Third, the court cannot decide any issues of credibility. See Anderson, 477 U.S. at 255.

The court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." Celotex, 477 U.S. at 327 (quoting Fed.R.Civ.P. 1).

III.

3

The uncontroverted facts are as follows:  WP Company operated as a grain warehouse and merchant company.  WP LLC is an agricultural commodity trading business specializing in warehouse operation.

Wells Fargo Bank, N.A., provided $34 million to WP Company for operating capital.  Wells Fargo had a first priority security interest in the assets of WP Company.  As part of the continuing financing, Wells Fargo required WP Company to engage a "crisis manager" from a list of firms provided by Wells Fargo.  Glenwood and Wells Fargo had prior business relationships in which Glenwood had been inserted as a "crisis manager" for Wells Fargo customers. Glenwood entered into a written agreement in August 2011 to be a "crisis manager" for WP Company.  The agreement provided the terms under which Glenwood would provide services for WP Company, which was in substantial financial distress.  In late September 2011, the agreement was amended to increase the amount to be paid to Glenwood to $100,000 per month and to establish a retainer of $300,000.

Glenwood claims that in late September or early October 2011 it made an oral agreement with Bryce Wells, the former chief executive officer of WP Company, for payment of a success fee in exchange for successful completion of additional work beyond that provided for in the written agreement between Glenwood and WP Company.  The additional services Glenwood says it was to provide to WP Company were "regarding the potential sale of WP Company." Glenwood claims that Wells required it and WP Company to not put the agreement in writing.

4

On October 20, 2011, Wells Fargo entered into a written "Loan Sale Agreement" to sell all of its rights under the loan agreement with WP Company to QuartrA, LLC, a third-party unrelated to WP Company.  The loan sale agreement provided that (1) there was a $23 million shortfall in Wells Fargo's collateral and (2) the agreement was made for the exclusive benefit and protection of Wells Fargo and QuartA, and that there were no direct or indirect beneficiaries of the agreement.

WP Company gave written notice to Glenwood on October 21, 2011, that WP Company was terminating Glenwood's engagement under the written agreement with thirty days notice.

On November 21, 2011, WP Company demanded return of the balance of the retainer held by Glenwood.  In a letter to WP Company on December 8, 2011, Glenwood stated that the "additional work" allegedly requested by Wells had been completed, and the amount of the success fee was to be negotiated at the completion of the work.  On December 13, 2011, QuartA advised Glenwood that there had never been any consent by QuartA or its companies to pay a success fee to Glenwood.  Glenwood contends the success fee is 10% of the value of WP Company.

On March 1, 2012, a written asset purchase agreement between WP Company and WP LLC was closed.  The agreement stated that WP Company had sold essentially all its assets to WP LLC for $100 and an assumption of specified liabilities, and that the purchase and sale was to be in lieu of and with the same force and effect as if WP LLC had foreclosed on the liens and security interests of QuartA

under the credit agreement.  No agreement between WP Company and Glenwood is specified as a liability assumed by WP LLC.

IV.

In its claims against WP Company, Glenwood's only measure of damages is an alleged "success fee" of 10% of the value of WP Company promised by WP Company.  WP Company denies that it ever promised Glenwood such a success fee.  But, WP Company contends that it is entitled to summary judgment on WP Company's claims, even if such a success fee was promised, because Glenwood cannot introduce evidence to support its claim for damages due to its failure to identify an expert witness on the value of WP Company. Without an expert witness on the value of WP Company, WP Company contends that Glenwood cannot make a sufficient showing of its damages.

This presents an interesting issue.  Glenwood believes that it has sufficient evidence, without an expert witness, to support its claim for damages.  WP Company contends that Missouri law requires an expert witness whenever the issue concerns the valuation of a business for the purposes of damages.

The court begins with WP Company's suggestion that Missouri law requires an expert witness to testify on the value of a business.  In support of this contention, they point to <u>Housman v. Fiddyment</u>, 421 S.W.2d 284 (Mo. banc 1967).

Initially, the court notes that we are not persuaded that Missouri law always requires the presentation of expert testimony on the value of a business.  No such statement is contained in

Housman and WP Company has not pointed to any Missouri case where such a statement is made.  Rather, in Housman, the Missouri Supreme Court indicates only that when jurors, for want of experience or knowledge of the subject under inquiry, are incapable of reaching intelligent opinion without outside aid, courts out of necessity admit testimony of experts in the field.   421 S.W.2d at 289.  Thus, allowing experts to give opinions on the subject of inquiry, instead of requiring the witness to give only facts, is an exception to the general rule that witnesses must state facts.  Id.  This is similar to the Federal Rules of Evidence.  See F.R.E. 702("A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:  (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.").  The court notes that it has discovered several Missouri cases where damages were decided based upon the valuation of a business without expert testimony.  See In re Marriage of Wood, 262 S.W.3d 267, 275 (Mo.App. 2008); Summerville v. Summerville, 869 S.W.2d 79, 82 (Mo.App. 1993), overruled in part on other grounds, Schriner v. Edwards, 69 S.W.3d 89, 93 (Mo.App. 2002).  Thus, the court is not convinced that expert testimony is

necessary under Missouri law in determining the valuation of a business.

In the absence of any requirement by Missouri law that expert testimony must be produced on the valuation of a business, the court believes that the issue of what qualifies as expert testimony and whether qualified expert testimony is required is controlled by F.R.E. 702.  See Burke v. Air Serv. Intern., Inc., 685 F.3d 1102, 1108-09 (D.C.Cir. 2012).  This brings us to the issue of whether Glenwood has produced sufficient evidence to allow a jury to consider the value of WP Company.  At the present time, the court is unable to determine this issue.  The record is clear that Glenwood has not designated any expert witnesses in this case.  The law is also clear that generally the valuation of a business requires expert testimony.  However, there are exceptions. Glenwood has suggested that its witnesses can offer evidence about the value of WP Company.  The court believes that there is not enough evidence before the court to evaluate this issue.  A decision on it must await trial.  This will require the court to consider the evidence possessed by these witnesses and the nature of the testimony they will offer.  WP Company has not demonstrated in its motion for summary judgment that these witnesses cannot offer any evidence in support of the issue of the value of WP Company.  As a result, the court must deny summary judgment to WP Company on this matter.

V.

In its motion, WP LLC raises four arguments concerning the alleged oral contract between Glenwood and WP Company. First, WP LLC contends that the written agreement entered into between Glenwood and WP Company did not allow the subsequent oral agreement alleged by Glenwood. Second, WP LLC argues that the credit agreement that WP Company entered into with Wells Fargo did not allow WP Company to enter into the oral contract with Glenwood. Third, WP LLC contends that Glenwood cannot assert a breach of contract claim against it because it was not a party to the oral contract. Finally, WP LLC contends that Glenwood, as an agent of WP Company, cannot rely upon the oral contract because it was aware that Wells did not have the authority to make the oral contract on behalf of WP Company.

WP LLC also contends that Glenwood's quantum meruit claim must fail because it was not a party to the oral contract between WP Company and Glenwood and, thus, never requested Glenwood to provide any "additional services."

Glenwood has responded that (1) the written agreement between WP Company and Glenwood did not preclude the oral contract between WP Company through Wells and it; (2) any provisions in the credit agreement between Wells Fargo and WP Company cannot bar its claim against WP Company; and (3) WP LLC has not established that Glenwood was an agent of WP Company. Finally, Glenwood contends that WP LLC is liable for the contract between Glenwood and WP Company and for quantum meruit because WP LLC is a successor in interest to WP Company.

9

The court fails to find that the arguments offered by WP LLC require the entry of summary judgment in its favor.  Initially, the court notes that the written agreement entered into between Glenwood and WP Company does not preclude the parties from amending the document.  As noted by WP LLC, the written agreement does provide a list of Glenwood's duties and responsibilities.  However, the agreement provides that these duties and responsibilities shall be "without limitation."  WP LLC omitted this phrase when it discussed the duties and responsibilities owed by Glenwood under the agreement.  The term "without limitation" indicates that the parties' intent was not to limit Glenwood's services under the agreement.  Accordingly, this contention does not entitle WP LLC to summary judgment on Glenwood's oral contract claim.

Next, the court must examine the credit agreement entered into by WP Company with Wells Fargo.  This agreement did place certain limitations on what WP Company could do.  However, as suggested by Glenwood, these provisions cannot bar Glenwood from seeking relief on its oral contract claim when there is no evidence that it was aware of the provisions in the credit agreement.  Glenwood was not a party to that agreement.  Wells Fargo may have an action against WP Company under the credit agreement, but, based upon the information before the court, that credit agreement cannot preclude Glenwood's oral contract against WP LLC.

WP LLC also contends that Glenwood cannot assert a breach of contract claim against it because it was not a party to the oral agreement between Glenwood and WP Company.  WP LLC also contends

10

that Glenwood's quantum meruit claim must fail because it was not a party to the oral contract between WP Company and Glenwood and, thus, never requested Glenwood to provide any "additional services." Glenwood points out that it is seeking to establish liability by WP LLC based upon the fact that WP LLC is a successor in interest to WP Company. WP Company suggests that Glenwood has not presented continuation liability as a theory of recovery in the pretrial order. WP Company further argues that it cannot be responsible for any liability to Glenwood because it did not assume any liability to Glenwood in the sale agreement with QuartA.

The court begins with the issue of whether Glenwood has properly asserted a claim of successor liability in the pretrial order. There is little question that such a claim is asserted in the pretrial order. Glenwood has plainly indicated in the pretrial order that its claims against WP LLC are based upon a "successor in interest" theory. The court does note that Glenwood omitted this term in setting forth the essential elements of its quantum meruit claim against WP LLC. The court, however, believes that Glenwood has sufficiently pleaded that it is alleging that WP LLC is a successor in interest to WP Company. Accordingly, the court must reject this argument.

Moreover, the law in Missouri is settled that a successor in interest can be held liable on a claim for quantum meruit. Want v. Leve, 574 S.W.2d 700, 715 (Mo.App. 1978). As noted by Glenwood, WP LLC has made no argument that the uncontroverted facts show that it is not a successor in interest to WP Company. WP LLC has suggested

11

that it has no liability to Glenwood because it purchased the corporate assets of WP Company.  However, WP LLC has failed to address the various exceptions to the general rule of nonliability when one corporation sells or transfers all its assets to another corporation.  See Edwards v. Black Twig Marketing and Communications LLC, 418 S.W.3d 512, 520 (Mo.App. 2013).  As a result, this issue must await the presentation of evidence at trial.  For the reasons above, the court shall deny WP LLC's motion for summary judgment.

VI.

Finally, the court shall consider Glenwood's motion for sanctions against WP LLC.  Glenwood seeks sanctions against WP LLC under Fed.R.Civ.P. 37(c) because it failed to adequately respond to its discvoery requests.  Glenwood suggests that WP LLC failed to properly respond to its discovery request when it sent 137 e-mail accounts, which Glenwood characterized as "a hard drive filled with thousands of irrelevant and jumbled documents."  Glenwood contends that default judgment against WP LLC would be an appropriate sanction.

WP LLC contends that it produced the e-mail accounts of individuals from WP Company "just as they were kept in West Plains Co.'s e-mail system."  WP LLC suggests that it complied with Fed.R.Civ.P. 34(b)(2)(E)(I) because that rule requires it to produce the e-mails as "they are kept in the usual course of business."

12

The court agrees with WP LLC.  The e-mails for each employee were produced and the e-mails are organized by date.  The court believes that WP LLC properly produced the e-mails sought by Glenwood.  The court is not persuaded that the actions of Glenwood violated Magistrate Sebelius' order or the Federal Rules of Civil Procedure.  Accordingly, Glenwood's motion for sanctions shall be denied.

IT IS THEREFORE ORDERED that West Plains Company's motion for summary judgment (Doc. # 37) be hereby denied.

IT IS FURTHER ORDERED that West Plains, LLC's motion for summary judgment (Doc. # 40) be hereby denied.

IT IS FURTHER ORDERED that Glenwood Capital, LLC's motion for sanctions (Doc. # 46) be hereby denied.

**IT IS SO ORDERED.**

Dated this 8th day of July, 2014, at Topeka, Kansas.

S/Richard D. Rogers
Richard D. Rogers
United States District Judge